IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-480-D

JACOB MARTIN, III, )
 )
 Plaintiff, )
 )
v. ) **ORDER**
 )
SESSOMS & ROGERS, P.A., and )
UNIFUND CCR PARTNERS, )
 )
 Defendants. )

Jacob Martin, III, ("plaintiff" or "Martin") failed to pay his credit-card debt. Sessoms & Rogers, P.A. ("Sessoms & Rogers"), and Unifund CCR Partners ("Unifund") ("collectively defendants") tried to collect the debt. Martin now alleges that in doing so defendants violated the Fair Debt Collection Practices Act ("FDCPA"), the United States Constitution, and the North Carolina Constitution. Specifically, Martin alleges that defendants improperly executed a sale of property exempted from sale by court order and thereby violated the FDCPA. Martin also alleges that Sessoms & Rogers deprived him of his property without due process of law in violation of 42 U.S.C. § 1983 and article I, section 19 of the North Carolina Constitution. Defendants move to dismiss the amended complaint for failure to state a claim upon which relief can be granted. As explained below, the court grant defendants' motion to dismiss.

I.

Martin is a resident of North Carolina. Am. Compl. ¶ 8. Sessoms & Rogers is a professional corporation and law firm located in North Carolina. Id. ¶¶ 9–12. Unifund is a partnership organized under the laws of New York with its principal place of business in Ohio. Id. ¶ 15. For purposes of defendants' motion to dismiss, defendants are "debt collectors" under 15 U.S.C. § 1692a(6). See id. ¶¶ 9–19. Martin's federal complaint arises out of events that took place in a state-court action, which the court briefly summarizes below.

Martin had a credit-card account with Citibank. When Martin failed to pay his credit-card debt, Citibank assigned the debt to Unifund for collection. See id. ¶¶ 23–26. On April 6, 2006, Unifund filed an action in North Carolina state court to collect the debt. Compl., Unifund CCR Partners v. Martin, No. 06 CvD 3232 (N.C. Dist. Ct. April 6, 2006). Sessoms & Rogers represented Unifund in the North Carolina state court action. See Am. Compl. ¶ 27. On June 28, 2006, Unifund obtained a default judgment against Martin. Id. ¶ 28. On November 30, 2007, Unifund filed a "notice of right to have exemptions designated" and on December 18, 2007, Martin was served with this notice. See Defs.' Mem. Supp. First Mot. Dismiss Ex. 2. On January 8, 2008, Martin filed a motion to claim exempt property. Am. Compl. ¶¶ 29–30; Defs.' Mem. Supp. First Mot. Dismiss Ex. 3. Martin claimed as exempt real property located in Fayetteville, North Carolina ("Fayetteville property"), which Martin had used as a rental property. Am. Compl. ¶ 30 & n.2; see Defs.' Mem. Supp. First Mot. Dismiss Ex. 3.

On July 18, 2008, Unifund filed a second "notice of right to have exemptions designated." On July 22, 2008, Martin was served with this notice. Defs.' Mem. Supp. First Mot. Dismiss Ex. 4. Martin did not respond with a second motion to claim exempt property.

On September 12, 2008, Unifund filed a request for a writ of execution against Martin. Defs.' Mem. Supp. First Mot. Dismiss Ex. 5. On September 15, 2008, the North Carolina state court issued an order designating as exempt all property listed in Martin's motion to claim exempt property, including the Fayetteville property. See Am. Compl. ¶ 32; Defs.' Mem. Supp. First Mot. Dismiss Ex. 6. Also on September 15, 2008, the North Carolina state court issued a writ of execution to the Cumberland County Sheriff's Office. See Am. Compl. ¶ 31; Defs.' Mem. Supp. First Mot. Dismiss Ex. 7. The writ of execution stated that the sheriff was to satisfy the default judgment against Martin except as to property set off as exempt. See Defs.' Mem. Supp. First Mot. Dismiss Ex. 7.

On September 22, 2008, the Cumberland County Sheriff's Office faxed a copy of Martin's motion to claim exempt property to Sessoms & Rogers. See Am. Compl. ¶ 34. On September 30, 2008, Unifund filed an objection to Martin's motion to claim exempt property. Defs.' Mem. Supp. First Mot. Dismiss Ex 8; see Am. Compl. ¶ 37. According to Martin, once Unifund objected to Martin's motion to claim exemptions, North Carolina law required a hearing before a North Carolina state court judge. See Am. Compl. ¶¶ 40–41; N.C. Gen. Stat. § 1C-1603(e)(7). No hearing took place. See Am. Compl. ¶ 41.

On October 8, 2008, the Cumberland County Sheriff filed a "notice of execution sale of real property," scheduling the execution sale of the Fayetteville property for November 5, 2008. Defs.' Mem. Supp. First Mot. Dismiss Ex. 9. On October 10, 2008, Martin received a copy of the notice of execution sale. Id. Ex. 10; see Am. Compl. ¶ 47. The Cumberland County Sheriff's Office also posted notices of the execution sale at the Cumberland County Courthouse and on the Fayetteville property. See Am. Compl. ¶ 47.

On November 5, 2008, the execution sale of the Fayetteville property took place. See id. ¶ 53. However, nobody bid on the property. Id. Sessoms & Rogers then asked the Cumberland County Sheriff's Office to hold another execution sale on November 12, 2008. See Am. Compl. ¶¶ 53–54; cf. N.C. Gen. Stat. § 1-339.58 (providing for the postponement of execution sales). The Cumberland County Sheriff's Office posted notice of the November 12, 2008 sale in the Cumberland County Courthouse, but not on the Fayetteville property. See Am. Compl. ¶¶ 56–57. On November 12, 2008, the Fayetteville property sold to the only bidder for $7,145.75. Id. ¶ 58, 62–63.

On November 18, 2008, an employee with the real estate firm conducting the closing on the Fayetteville property called Martin to inform him that the Fayetteville property had sold. Id. ¶ 64. On November 20, 2008, Martin, now represented by an attorney, moved in state court to set aside the entry of default and default judgment. See Defs.' Mem. Supp. First Mot. Dismiss Ex. 11. On November 21, 2008, Martin sought an order enjoining defendants from confirming the execution

3

sale. Am. Compl. ¶ 66. On November 25, 2008, Martin sued Sessoms & Rogers, Unifund, Cumberland County Sheriff Earl Butler, and Clerk of Superior Court Linda Priest in North Carolina state court seeking an injunction and declaratory relief. See id. ¶ 67; Defs.' Mem. Supp. First Mot. Dismiss Ex. 13. Eventually, the state court set aside the underlying judgment against Martin for lack of subject-matter jurisdiction in that the clerk of court did not possess authority under N.C. Civ. R. P. 55 to issue default judgment against Martin and defendants' objection to Martin's exemption became moot. Am. Compl. ¶ 69. Martin then voluntarily dismissed his state court action. See id. ¶ 67.

On November 4, 2009, Martin filed suit in this court against Sessoms & Rogers and Unifund [D.E. 1]. On February 1, 2010, Martin amended his complaint and now alleges: (1) that defendants violated the FDCPA; (2) that Sessoms & Rogers violated 42 U.S.C. § 1983 and the due process clause of the Fourteenth Amendment of the United States Constitution; and (3) that Sessoms & Rogers violated article I, section 19 of the North Carolina Constitution. See Am. Compl. ¶¶ 84–91. On February 18, 2010, defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted [D.E. 18].

II.

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). Although a court "assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in [plaintiff's] favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), a court need not accept a complaint's legal conclusions. See Ashcroft, 129 S. Ct. at 1949–50. Similarly, a court need not accept as true "unwarranted

4

inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Ashcroft, 129 S. Ct. at 1949–50.

A.

Defendants move to dismiss Martin's FDCPA claims based on the FDCPA's one-year statute of limitations. The FDCPA protects consumers from certain unfair debt collection practices. See 15 U.S.C. § 1692(a); United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996). However, FDCPA actions must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Where a party's FDCPA claim is based on improper pursuit of debt-collection litigation, the alleged violation occurs either on the date the lawsuit is filed, see Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997), or on the date that the debtor is served with the complaint. See Johnson v. Riddle, 305 F.3d 1107, 1113 (10th Cir. 2002). The course of debt-collection litigation, without more, is not a "continuing violation" of the FDCPA. See, e.g., Schaffhauser v. Citibank (S.D.) N.A., 340 Fed. Appx. 128, 131 (3d Cir. 2009) (per curiam) (unpublished); Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 341 (D.N.J. 2009) (collecting cases); Nutter v. Messerli & Kramer, P.A., 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007). Furthermore, "new communications concerning an old claim do not start a new period of limitations." Nutter, 500 F. Supp. 2d at 1223 (alterations and quotation omitted); see, e.g., Reese v. JPMorgan Chase & Co., 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009); Parker, 650 F. Supp. 2d at 341; Campos v. Brooksbank, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000).

Martin filed his federal suit on November 4, 2009, and any alleged FDCPA violations which occurred before November 4, 2008, are time-barred. See 15 U.S.C. § 1692k(d). Thus, Martin alleges that Sessoms & Rogers' November 5, 2008 communication with the Cumberland County Sheriff's Office about postponing and rescheduling the execution sale was a discrete FDCPA violation which "occurred when [d]efendants agreed to sell Mr. Martin's property outside of proper procedure and in violation of law — after . . . November 5, 2008." Pl.'s Mem. Opp'n 13 (emphasis

5

removed).[1] However, the November 5, 2008 communication merely was a "new communication[] concerning an old claim." Nutter, 500 F. Supp. 2d at 1223; Parker, 650 F. Supp. 2d at 341; Campos, 120 F. Supp. 2d at 1274; Sierra v. Foster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999). Accordingly, the November 5, 2008 communication is not a discrete FDCPA violation, and the court grants defendants' motion to dismiss Martin's FDCPA claim.

B.

Next, Martin claims that Sessoms & Rogers violated 42 U.S.C. § 1983 and the due process clause of the Fourteenth Amendment to the United States Constitution. See Am. Compl. ¶¶ 86–89. As for how Sessoms & Rogers allegedly violated Martin's due process rights, his amended complaint is unclear. Under the section titled "Causes of Action," Martin states that "[b]y their actions, [d]efendant S&R ... violated 42 U.S.C. § 1983" and "the due process clause of the United States Constitution." Am. Compl. ¶¶ 87, 89. Martin seems to allege three separate due process violations: (1) that Sessoms & Rogers deprived Martin of due process of law when it "proceeded with a sheriff's execution sale ... on November 5, 2008," even though Martin had sought an exemption for the Fayetteville property, id. ¶ 42; (2) that on November 5, 2008, Sessoms & Rogers "directed the sheriff to sell" the Fayetteville property despite "notice that the [Fayetteville] property was listed as exempt," id. ¶ 43; and (3) that North Carolina's scheme for postponement of an execution sale on real property found in N.C. Gen. Stat. § 1-339.58 and under which Sessoms & Rogers proceeded is unconstitutional for failure to provide adequate notice of postponement. See Am. Compl. ¶¶ 48–61, 70–76, 79; see also Pl.'s Mem. Opp'n 14–20.

Section 1983 states:

> Every person who, under color of any state statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United

---

[1] Although the parties have not addressed whether plaintiff's amended complaint relates back to the date plaintiff filed his original complaint, the court assumes (without deciding) that the claims in plaintiff's amended complaint relate back to November 4, 2009. See Fed. R. Civ. P. 15(c).

6

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim under section 1983, Martin must allege: (1) that Sessoms & Rogers deprived him "of a right secured by the Constitution and laws of the United States;" and (2) that Sessoms & Rogers "deprived him of this right under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970) (quotations omitted); Kendall v. City of Chesapeake, 174 F.3d 437, 440 (4th Cir. 1999). Section 1983 provides the injured party with a cause of action for violations of constitutional rights, but imposes liability only against those acting "under color of state law." See, e.g., Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978); Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001). "In cases construing section 1983, 'under color' of law has been treated consistently as equivalent to the 'state action' requirement under the Fourteenth Amendment." Haavistola v. Cmty. Fire Co. of Rising Sun, 6 F.3d 211, 215 (4th Cir. 1993) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)).

The under-color-of-law element of section 1983 excludes from its reach "merely private conduct, no matter how . . . wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quotations omitted). Such a limitation preserves an area of individual freedom by recognizing "that most rights secured by the Constitution are protected only against infringement by governments." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998) (quotations omitted). Sometimes, a private party's actions may be deemed "state action," but only when "the state has so dominated such activity as to convert it to state action." Philips v. Pitt County Mem'l Hosp., 572 F.3d 176, 181 (4th Cir. 2009). "Mere approval of or acquiescence in the initiatives of a private party is insufficient." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 616 (4th Cir. 2009) (quotations omitted).

7

Although there is no "precise formula"[2] for treating a private act as state action, generally, "'state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" Mentavlos, 249 F.3d at 310 (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)) (quotations omitted). In analyzing whether state action exists, a court first determines whether "the deprivation [was] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id.

Both parties rely on Lugar to support their argument. In Lugar, a debtor sued his creditor alleging that the creditor's prejudgment attachment of the debtor's property under a Virginia statutory scheme deprived the debtor of his property without due process of law. See Lugar, 457 U.S. at 924–25. The debtor alleged two separate causes of action under section 1983: (1) that the Virginia statutory scheme violated the Fourteenth Amendment; and (2) that the debtor's use of the statutory scheme violated the Fourteenth Amendment. Id. at 940–42. The Supreme Court held that only the first claim was viable. The Supreme Court explained:

> While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, if the second element of the state-action requirement [i.e., a state-actor] is met as well.

Id. at 941.

Martin alleges that (1) Sessoms & Rogers deprived Martin of due process of law when it "proceeded with a sheriff's execution sale . . . on November 5, 2008," even though Martin had sought an exemption for the Fayetteville property, Am. Compl. ¶ 42, and (2) on November 5, 2008,

---

[2]Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961).

8

Sessoms & Rogers "directed the sheriff to sell" the Fayetteville property despite "notice that the [Fayetteville] property was listed as exempt." Id. ¶ 43. As in Lugar, however, Martin has done no more than allege that Sessoms & Rogers "misused or abused" North Carolina's statutory procedure for execution against real property. See, e.g., Lugar, 457 U.S. at 941–42; Jones v. Poindexter, 903 F.2d 1006, 1011 (4th Cir. 1990). As such, the allegation fails to state a claim upon which relief can be granted. See, e.g., Lugar, 457 U.S. at 942; Revis v. Meldrum, 489 F.3d 273, 291 (6th Cir. 2007); Jones, 903 F.2d at 1011.

As for Martin's allegation that North Carolina's scheme for postponement of an execution sale on real property found in N.C. Gen. Stat. § 1-339.58 and under which Sessoms & Rogers proceeded is unconstitutional, see Am. Compl. ¶¶ 48–61, 70–76, 79, the court assumes (without deciding) that plaintiff has alleged state action. Cf. Lugar, 457 U.S. at 941; Revis, 489 F.3d at 291 (holding that the state-action requirement was not met and explaining that "[s]ignificantly, [the plaintiff] does not challenge the constitutionality of Tennessee's execution procedures"). State action is necessary, but not sufficient, to state a due process claim under 42 U.S.C. § 1983. Thus, the court next addresses whether Martin has stated a due process claim concerning N.C. Gen. Stat. § 1-339.58.

Section 1-339.58 provides:

(a) The sheriff may postpone the sale to a day certain not later than six days, exclusive of Sunday, after the original date for the sale:

(1) When there are no bidders,

(2) When, in the sheriff's judgment, the number of prospective bidders at the sale is substantially decreased by inclement weather or by any casualty,

(3) When there are so many other sales advertised to be held at the same time and place as to make it inexpedient and impracticable, in the sheriff's judgment, to hold the sale on that day,

(4) When the sheriff is unable to hold the sale because of illness or for other good reason, or

(5) When other good cause exists.

9

(b) Upon postponement of a sale, the sheriff shall:

> (1) At the time and place advertised for the sale, publicly announce the postponement of the sale; and
>
> (2) On the same day, attach to or enter on the original notice of sale or a copy of the notice, posted as provided by [N.C. Gen. Stat. §] 1-339.52 in the case of real property or [N.C. Gen. Stat. §] 1-339.53 in the case of personal property, a notice of the postponement.

(c) The posted notice of postponement shall:

> (1) State that the sale is postponed,
>
> (2) State the hour and date to which the sale is postponed,
>
> (3) State the reason for the postponement, and
>
> (4) Be signed by the sheriff.

(d) If a sale is not held at the time fixed for the sale and is not postponed as provided by this section, or if a postponed sale is not held at the time fixed for the sale, the sheriff shall report the facts with respect thereto to the clerk of the superior court, who shall thereupon make an order for the sale of the property to be held at such time and place and upon such notice to be given in the manner and for the length of time as the clerk of the superior court deems advisable, but nothing in this section relieves the sheriff of liability for the nonperformance of the sheriff's official duty.

N.C. Gen. Stat. § 1-339.58. Martin describes the right about which he is concerned as "the right to be free from an unlawful sale of his home by a private person with the assistance of the sheriff's office." Am. Compl. ¶ 55. Essentially, Martin contends that N.C. Gen. Stat. § 1-339.58 fails to afford proper notice or opportunity for a hearing concerning the postponement of an execution sale and, therefore, violates due process under the Fourteenth Amendment. See Pl.'s Mem. Opp'n 15–17. Sessoms & Rogers responds that section 1-339.58 complies with due process. See Defs.' Reply 8–9.

"'[I]n any proceeding which is to be accorded finality,' due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Plemons v. Gale, 396 F.3d 569, 573 (4th Cir. 2005) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). Thus, although the Constitution does not always require actual notice, it does require

reasonable efforts to apprise a party of the pendency of an execution against property. See, e.g., Dusenbery v. United States, 534 U.S. 161, 168–71 (2002). In analyzing due-process requirements, a court considers the private interest that will be affected, the risk of erroneous deprivation compared to the probable value of additional procedural safeguards, and the government interest at stake. Mathews v. Eldridge, 424 U.S. 319, 335 (1976); Mallette v. Arlington County Employees' Supplemental Retirement Sys. II, 91 F.3d 630, 640 (4th Cir. 1996).

Martin received constitutionally adequate notice and an opportunity to be heard before the execution sale scheduled for November 5, 2008. See, e.g., Mullane, 339 U.S. at 314; Saint Regis of Onslow County v. Johnson, 191 N.C. App. 516, 523–25, 663 S.E.2d 908, 912–14 (2008). In addition, upon postponement on November 5, 2008, section 1-339.58(b) required notice in the form of a public announcement. See N.C. Gen. Stat. § 1-339.58(b). The notice provided under section 1-339.58(b) is reasonable under the circumstances and complies with due process under the Fourteenth Amendment. See, e.g., Dusenberry, 534 U.S. at 170–71; Mullane, 339 U.S. at 314–15; see also Saint Regis of Onslow County, 191 N.C. App. at 523–25, 663 S.E.2d at 912–14. In considering the notice provided under section 1-339.58(b) concerning the postponement, the court cannot ignore the actual notice that Martin received at earlier stages in the process concerning the execution sale. See, e.g., Am. Compl. ¶ 47; cf. Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 489 (1988) ("In assessing the propriety of actual notice . . . consideration should be given to the practicalities of the situation . . . ."). Moreover, Martin has cited no authority for his novel theory that due process requires some additional notice beyond that set forth in section 1-339.58(b) before a sheriff may postpone an execution sale. Finally, if Martin is alleging that the sheriff failed to comply with state law, such an allegation is not actionable under section 1983. See, e.g., Poindexter, 903 F.2d at 1011. In sum, Martin has failed to state a claim under the due process clause and 42 U.S.C. § 1983, and the claim is dismissed.

C.

Finally, Martin claims that Sessoms & Rogers deprived him of due process of law in violation of article 1, section 19 of the North Carolina Constitution. A person may bring a direct claim under the North Carolina Constitution if no other adequate state remedy exists. See, e.g., Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). Assuming without deciding that plaintiff has no other adequate state remedy, Martin has failed to state a claim that Sessoms & Rogers violated plaintiff's due process rights under article I, section 19 of the North Carolina Constitution. See, e.g., State v. Bryant, 359 N.C. 554, 563, 614 S.E.2d 479, 485 (2005); Saint Regis of Onslow County, 191 N.C. App. at 523–25, 663 S.E.2d at 912–14; see also Dusenberry, 534 U.S. at 170–71; Mullane, 339 U.S. at 314–15.

III.

As explained above, the court GRANTS defendants' motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted [D.E. 18].

SO ORDERED. This 12 day of August 2010.

JAMES C. DEVER III
United States District Judge

12